E. TYLOR CLAGGETT, JR., Ph.D., P.E., CFA, Plaintiff v. WAKE FOREST UNIVERSITY, Defendant

No. COA96-901

(Filed 1 July 1997)

**1. Colleges and Universities § 12 (NCI4th)— denial of tenure—procedures followed—no breach of contract—no property interest sufficient to trigger due process**

The trial court did not err by dismissing claims for breach of contract arising from the denial of tenure for failure to state a claim upon which relief could be granted. Taking plaintiff's allegations as true and assuming that defendant's policies, procedures and Guidelines were made a part of plaintiff's contract of employment, the complaint discloses on its face that defendant's decision with respect to plaintiff's application for tenure was not reached in violation of those policies, procedures and Guidelines and had a rational basis, so as not to have been arbitrary and capricious. As to plaintiff's claim that defendant breached his contract by not dealing with him pursuant to due process, the U.S. Supreme Court has held that a non-tenured employee does not have a property interest sufficient to trigger due process requirements. N.C.G.S. § 1A-1, Rule 12(b)(6).

**Am Jur 2d, Civil Rights § 73; College and Universities § 11.**

Construction and effect of tenure provisions of contract or statute governing employment of college or university faculty member. 66 ALR3d 1018.

2. Colleges and Universities § 12 (NCI4th)— denial of tenure—allegation of fraud—no allegation of intent to deceive

The trial court properly dismissed a claim of fraud arising from a tenure denial for failure to state a claim upon which relief could be granted where the complaint alleged only that plaintiff relied on defendant's implied promise to follow the Guidelines and policies and on the "possibilities" for tenure. There was no allegation of an intent to deceive plaintiff. N.C.G.S. § 1A-1, Rule 12(b)(6).

Am Jur 2d, Civil Rights § 73; College and Universities § 11.

Construction and effect of tenure provisions of contract or statute governing employment of college or university faculty member. 66 ALR3d 1018.

3. Colleges and Universities § 12 (NCI4th)— denial of tenure—claims for bad faith—dismissed

The trial court properly dismissed for failure to state a claim upon which relief could be granted claims of bad faith arising from a tenure denial where defendant followed its procedures when it considered plaintiff's application for tenure and defendant's decision not to grant tenure was rational.

Am Jur 2d, Civil Rights § 73; College and Universities § 11.

Construction and effect of tenure provisions of contract or statute governing employment of college or university faculty member. 66 ALR3d 1018.

4. Colleges and Universities § 12 (NCI4th)— denial of tenure—claim for wrongful discharge—dismissed

The trial court properly dismissed for failure to state a claim upon which relief could be granted a claim for wrongful discharge arising from a tenure denial where plaintiff alleged that he was employed pursuant to teaching appointments of definite duration. He was not an at-will employee and therefore is limited to an action in contract. N.C.G.S. § 1A-1, Rule 12(b)(6).

Am Jur 2d, Civil Rights § 73; College and Universities § 11.

Construction and effect of tenure provisions of contract or statute governing employment of college or university faculty member. 66 ALR3d 1018.

5. **Colleges and Universities § 12 (NCI4th)— denial of tenure—claim for violation of public policy—dismissed**

The trial court properly dismissed for failure to state a claim upon which relief could be granted plaintiff's assertion that defendant's failure to grant him tenure and renew his teaching appointment violated public policy where he did not allege that defendant discharged him on the basis of age. N.C.G.S. § 1A-1, Rule 12(b)(6).

Am Jur 2d, Civil Rights § 73; College and Universities § 11.

Construction and effect of tenure provisions of contract or statute governing employment of college or university faculty member. 66 ALR3d 1018.

6. **Colleges and Universities § 12 (NCI4th)— denial of tenure—declaratory judgment denied**

The trial court properly dismissed for failure to state a claim upon which relief could be granted plaintiff's declaratory judgment action arising from his tenure denial where the complaint essentially asked the court to review the merits of the decision to deny tenure. This the courts have been reluctant to do. Moreover, the complaint affirmatively shows that there is no actual or real presently existing controversy between plaintiff and defendant growing out of the employment contract and therefore no basis for declaratory relief.

Am Jur 2d, Civil Rights § 73; College and Universities § 11.

Construction and effect of tenure provisions of contract or statute governing employment of college or university faculty member. 66 ALR3d 1018.

7. **Colleges and Universities § 12 (NCI4th)— denial of tenure—punitive damages—claim dismissed**

Plaintiff's claim for punitive damages arising from the denial of tenure was properly dismissed for failure to state a claim upon

**CLAGGETT v. WAKE FOREST UNIVERSITY**

[126 N.C. App. 602 (1997)]

which relief could be granted where he could not make out a *prima facie* case for the underlying claims.

**Am Jur 2d, Civil Rights § 73; College and Universities § 11.**

**Construction and effect of tenure provisions of contract or statute governing employment of college or university faculty member. 66 ALR3d 1018.**

Appeal by plaintiff from order entered 8 May 1996 by Judge W. Steven Allen, Sr., in Forsyth County Superior Court. Heard in the Court of Appeals 2 April 1997.

*Randolph M. James and Steven S. Long for plaintiff-appellant.*

*Bell, Davis & Pitt, P.A., by William K. Davis and Stephen M. Russell, for defendant-appellee.*

MARTIN, John C., Judge.

Plaintiff brought this action after defendant University declined to grant him tenure and promotion to the position of Associate Professor of Management at defendant's Babcock Graduate School of Management (Babcock School) and declined to renew his teaching appointment. According to the allegations of the complaint, plaintiff was first employed in 1988 as a Visiting Assistant Professor of Management at the Babcock School. Beginning in 1990, he was appointed to successive two-year appointments as an Assistant Professor of Management, a tenure track position. In 1994, defendant denied plaintiff tenure and offered him a one-year terminal contract of employment, which plaintiff accepted. Dean McKinnon of the Babcock School informed plaintiff that defendant did not grant him tenure because his finance and economics colleagues did not support granting him tenure, granting him tenure would "set a dangerous precedent" for the school, and the school would "have the freedom to hire à scholar with a national reputation" if plaintiff was not granted tenure.

Plaintiff alleged:

27. . . . Dr. Claggett was made to understand that there were objective policies, procedures, guidelines, and standards for achieving tenure at the Babcock School; that those policies, procedures, guidelines, and standards were adhered to; that his work would be evaluated according to those policies, procedures,

guidelines, and standards; that he would receive a favorable evaluation if he complied with those standards and guidelines; and that he would be granted tenure if that evaluation were favorable. He did in fact comply with those standards and guidelines, and met and exceeded all goals required for a grant of tenure.

28. Doctor Claggett was never informed, in writing or otherwise, that [defendant] considered that it could deny him tenure solely within its discretion.

Plaintiff asserted seven theories of liability against defendant: breach of employment contract, aggravated breach of employment contract, fraud in the inducement/fraudulent misrepresentation, breach of contractual duty of good faith, tortious bad faith, and wrongful discharge. Plaintiff sought compensatory and punitive damages, and a declaratory judgment that he is entitled to tenure.

Attached to the complaint were nineteen exhibits including, *inter alia*, a 1995 draft of the "Procedural Guidelines for Faculty Evaluation, Reappointment, and Promotion/Tenure Decisions" (Guidelines) and the university-wide tenure and promotion policies (policies) entitled "Employment of Members of the Faculty of Wake Forest University," which plaintiff alleged were incorporated into his employment contract. Plaintiff's exhibit "J" entitled "Employment of Members of the Faculty of Wake Forest University," provides in pertinent part:

1. Term of Appointment. . . . There is no right to reappointment at the expiration of a specified [employment] term, but successive appointments may be made in accordance with University policy.

2. Tenure. The University maintains a faculty tenure policy of general application. Tenure is granted only by action of the Board of Trustees.

. . .

5. Policies and Procedures of General Application. . . . [P]olicies may be changed from time to time in accordance with the needs of the University, and the right to make such changes is reserved to the university.

Plaintiff's exhibit "M", the 1995 revision of the Guidelines, which plaintiff alleged contained no material changes from the version in place in 1988, provides in pertinent part:

**CLAGGETT v. WAKE FOREST UNIVERSITY**

[126 N.C. App. 602 (1997)]

4.2 It must be clearly understood by all faculty members that tenure is granted, not merely earned. Accomplishment by itself does not justify tenure. A tenure recommendation should only be made when the trade-off between flexibility of future hiring and the expectation of ongoing significant contributions to the School is in the best long-term interests of the School.

. . .

11.1 The probability of a favorable decision increases with higher evaluations by the tenured faculty. As noted above, however, decisions involving a tenure commitment cannot be based on an evaluation of the performance of the faculty member in isolation, but also must ultimately be directed by the likely future contributions of the faculty member relative to the longer-term needs and mission of the School.

. . .

25.0 For decisions involving either tenure or promotion, the opinions of outside evaluators will normally be sought. The candidate faculty member will be asked to furnish a list of individuals who could serve in this capacity, . . . . A similar list will be compiled by the tenured faculty. . . . The Chairperson of the tenured faculty and the Dean will select individuals from these lists who will be asked to provide evaluations. Normally two names will be chosen from each list.

26.0 After the dossiers have been available a sufficient time to allow review by the tenured faculty, the Chairperson of the tenured faculty will call a meeting for discussion and consideration of each candidate. After this meeting, each tenured faculty member senior in rank to the candidate will be expected to provide his/her individual recommendation to the Dean.

Before filing an answer, defendant moved to dismiss the complaint pursuant to G.S. § 1A-1, Rule 12(b)(6) (1990). The trial court granted defendant's motion. Plaintiff appeals.

All of plaintiff's assignments of error are directed to the dismissal of his complaint pursuant to G.S. § 1A-1, Rule 12(b)(6). The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the complaint. *Harris v. NCNB*, 85 N.C. App. 669, 355 S.E.2d 838 (1987). In deciding such a motion the trial court is to treat the allegations of the complaint as true. *Hickman v. McKoin*, 337 N.C. 460, 446 S.E.2d 80

(1994). A claim should be dismissed under this rule "if no law exists to support the claim made, if sufficient facts to make out a good claim are absent, or if facts are disclosed which will necessarily defeat the claim." *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990). A motion to dismiss in a declaratory judgment action is allowed only when the record clearly shows that there is no basis for declaratory relief, as when the complaint does not allege an actual, genuine existing controversy. *Consumers Power v. Power Co.*, 285 N.C. 434, 206 S.E.2d 178 (1974). Application of these rules to the allegations of plaintiff's complaint in this case requires that we affirm the order of the trial court.

I.

[1] In his first ("Breach of Contract") and second ("Aggravated Breach of Contract") causes of action, plaintiff alleged that defendant denied him tenure in violation of the Guidelines and policies which were incorporated into his employment contract, and therefore, defendant's decision to deny him tenure was "arbitrary and capricious."

To state a claim for breach of contract, the complaint must allege that a valid contract existed between the parties, that defendant breached the terms thereof, the facts constituting the breach, and that damages resulted from such breach. *RGK, Inc. v. Guaranty Co.*, 292 N.C. 668, 235 S.E.2d 234 (1977); *Cantrell v. Woodhill Enterprises, Inc.*, 273 N.C. 490, 160 S.E.2d 476 (1968).

In the present case, the allegations of plaintiff's complaint affirmatively disclose facts establishing that defendant followed its Guidelines and policies when it considered plaintiff's application for tenure, defeating his claim for breach of contract. From the allegations of the complaint, it affirmatively appears that defendant proceeded as required by its own policies in acting upon the issue of plaintiff's tenure. Plaintiff's application for tenure was considered at an appropriate time under the Guidelines; the required documentation was accomplished and plaintiff received an "outside review" as provided by Section 25 of the Guidelines; the tenured faculty voted on the question of whether plaintiff should be granted tenure as required by Section 26 of the Guidelines, and the Board of Trustees acted upon the issue of his tenure, a decision reserved to the Board pursuant to paragraph 2 of defendant's tenure and promotion policies.

CLAGGETT v. WAKE FOREST UNIVERSITY

[126 N.C. App. 602 (1997)]

Moreover, exhibits attached to the complaint establish that defendant's Board of Trustees was permitted to consider various factors other than plaintiff's performance and the recommendation of faculty in deciding whether or not to grant tenure. Paragraph 11.1 of the Guidelines states that a decision involving tenure "cannot be based on an evaluation of the performance of the faculty member in isolation." Paragraph 4.2 of the Guidelines reserves to defendant considerable flexibility to factor into its tenure decisions the long term interests of the School, including flexibility in hiring, so that the defendant's interest in hiring a scholar with a national reputation was a legitimate consideration in its decision to grant or deny tenure to plaintiff. Thus, taking plaintiff's allegations as true and assuming that defendant's policies, procedures and Guidelines were made a part of his contract of employment, the complaint discloses on its face that defendant's decision with respect to plaintiff's application for tenure was not reached in violation of those policies, procedures and Guidelines and had a rational basis, so as not to have been arbitrary and capricious. The mere allegation that defendant failed to grant plaintiff tenure is insufficient to allege any breach by defendant of the terms of plaintiff's employment contract.

Plaintiff also alleged in his first and second causes of action that defendant breached its contract with him by failing to "deal with him . . . pursuant to due process." However, the United States Supreme Court has held that a non-tenured employee does not have a property interest sufficient to trigger due process requirements. *Board of Regents v. Roth*, 408 U.S. 564, 33 L.Ed.2d 548 (1972). Because the complaint discloses facts affirmatively showing that defendant's actions did not constitute a breach of plaintiff's employment contract, his first two claims are necessarily defeated and were properly dismissed by the trial court.

II.

[2] In his third cause of action ("Fraud in the Inducement and Fraudulent Misrepresentation"), plaintiff alleged defendant had impliedly promised to follow its tenure procedures in good faith; that he had relied upon such representations when he accepted employment with defendant; that defendant, through Dean McKinnon, concealed from him that its tenure decisions were made arbitrarily and capriciously; and that he had been deceived thereby. As a result, plaintiff alleged that he has been damaged.

To state a claim for fraud, the complaint must allege with particularity: (1) that defendant made a false representation or concealment of a material fact; (2) that the representation or concealment was reasonably calculated to deceive him; (3) that defendant intended to deceive him; (4) that plaintiff was deceived; and (5) that plaintiff suffered damage resulting from defendant's misrepresentation or concealment. *Chesapeake Microfilm, Inc. v. Eastern Microfilm Sales and Service, Inc.*, 91 N.C. App. 539, 372 S.E.2d 901 (1988). "[T]he particularity requirement is met by alleging time, place, and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent act or representations." *Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 678 (1981).

Here, plaintiff's complaint alleges only that he relied on defendant's implied promise to follow the Guidelines and policies and on the "possibilities" for tenure. There is no allegation of an intent by defendant to deceive plaintiff; the complaint contains no allegation that at the time plaintiff accepted a position with defendant, defendant did not intend to abide by its Guidelines and policies if plaintiff requested tenure consideration, or that defendant had no intent to treat him fairly in its tenure decision. Accordingly, the trial court properly dismissed plaintiff's third cause of action.

### III.

**[3]** In the claims denominated as his fourth ("Breach of Contractual Duty of Good Faith") and fifth ("Tortious Bad Faith") causes of action, plaintiff alleged that "in light of Dr. Claggett's record and the vote of the tenured faculty, denying him tenure was an act of bad faith, was grossly arbitrary and capricious, was not based on substantial evidence, and was extremely harmful to Dr. Claggett."

"Every contract or agreement implies good faith and fair dealing between the parties to it, and a duty of cooperation on the part of both parties." *Gallimore v. Daniels Construction Co.*, 78 N.C. App. 747, 751, 338 S.E.2d 317, 319 (1986). As noted above, defendant followed its procedures when it considered plaintiff's application for tenure, and defendant's decision not to grant tenure to plaintiff was rational. As we have noted, the tenured faculty vote is just one step of many in determining whether to grant or deny tenure, and the decision to grant tenure is vested exclusively in the Board of Trustees, which must consider other factors as is made clear in the Guidelines.

Thus, the trial court properly dismissed the claims denominated as plaintiff's fourth and fifth causes of action.

IV.

**[4]** In plaintiff's sixth cause of action ("Wrongful Discharge"), he alleged that he was wrongfully discharged from employment in violation of the Guidelines and policies incorporated into his employment contract, and that his discharge was contrary to the public policy of North Carolina as set forth in the Equal Employment Practices Act, G.S. § 143-422.2 (1996) because, due to his age, it would make "it virtually impossible for him to achieve tenure at another university."

Plaintiff's tort claim for wrongful discharge was properly dismissed. The tort of wrongful discharge arises only in the context of employment at will. *Wagoner v. Elkin City Schools' Bd. of Educ.*, 113 N.C. App. 579, 440 S.E.2d 119, *disc. review denied*, 336 N.C. 615, 447 S.E.2d 414 (1994). Breach of contract is the remedy for a wrongfully discharged employee who is employed for a definite term or who is subject to discharge only for just cause. *Id.* Plaintiff alleges that he was employed pursuant to teaching appointments of definite duration; he was not, therefore, an at-will employee. As a result, plaintiff was limited to an action in contract, which we have determined was properly dismissed.

**[5]** Plaintiff's assertion that defendant's failure to grant him tenure and renew his teaching appointment violated public policy must also fail because he has not alleged that defendant discharged him on the basis of his age. Accordingly, the trial court properly dismissed plaintiff's sixth cause of action.

V.

**[6]** By his declaratory judgment action, plaintiff seeks a judgment that he be granted tenure immediately or, in the alternative, that defendant be required to state that its policies "have no actual effect." Plaintiff's allegation essentially asks us to review the merits of the decision to deny plaintiff tenure; we decline to do so. Courts have been reluctant to interfere with the subjective and scholarly judgments exercised in making tenure decisions. *See Lewis v. Chicago State College*, 299 F. Supp. 1357 (N.D. Ill. 1969); *Keddie v. Pennsylvania State University*, 412 F. Supp. 1264 (M.D. Pa. 1976). In *Clark v. Whiting*, 607 F.2d 634 (4th Cir. 1979), the Circuit Court stated:

Courts are not qualified to review and substitute their judgment for these subjective, discretionary judgments of professional experts on faculty promotions or to engage independently in an intelligent informal comparison of the scholarly contributions or teaching talents of one faculty member denied promotion with those of another member granted a promotion; in short, courts may not engage in "second-guessing" the University authorities in connection with faculty promotions.

*Id.* at 640. Moreover, plaintiff's complaint affirmatively shows that there is no actual or real presently existing controversy between plaintiff and defendant growing out of the employment contract, and therefore, no basis for declaratory relief. *See Consumers Power v. Power Co.* 285 N.C. 434, 206 S.E.2d 178 (1974).

[7] Because we hold that the trial court did not err in granting defendant's motion to dismiss on each of plaintiff's seven causes of action, plaintiff cannot make out a *prima facie* case for the underlying claims, and therefore he cannot make out a *prima facie* case for punitive damages. *See Jones v. Gwynne*, 312 N.C. 393, 323 S.E.2d 9 (1984). Accordingly, the trial court properly dismissed plaintiff's action, including his claims for punitive damages.

Affirmed.

Judges COZORT and McGEE concur.