**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LORD INDUSTRIES, INCORPORATED,
Plaintiff-Appellant,

and

REPUBLIC WESTERN INSURANCE
COMPANY,
Third Party Defendant-Appellant,                         No. 97-2174

v.

INSURANCE COMPANY OF NORTH
AMERICA,
Defendant & Third Party
Plaintiff-Appellee.

LORD INDUSTRIES, INCORPORATED,
Plaintiff-Appellee,

and

REPUBLIC WESTERN INSURANCE
COMPANY,
Third Party Defendant-Appellee,                          No. 97-2239

v.

INSURANCE COMPANY OF NORTH
AMERICA,
Defendant & Third Party
Plaintiff-Appellant.

Appeals from the United States District Court
for the Western District of North Carolina, at Charlotte.
Carl Horn, III, Chief Magistrate Judge.
(CA-95-200)

Argued: May 6, 1998

Decided: July 6, 1998

Before WILKINSON, Chief Judge, LUTTIG, Circuit Judge, and
BEEZER, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

_____

Affirmed in part, reversed in part and remanded by unpublished per
curiam opinion.

_____

**COUNSEL**

**ARGUED:** Wayne Paul Huckel, KENNEDY, COVINGTON, LOB-
DELL & HICKMAN, Charlotte, North Carolina, for Appellants. Wil-
liam Eric Freeman, MOORE & VAN ALLEN, Durham, North
Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Plaintiff Lord Industries, Inc. ("Lord"), and third party defendant
Republic Western Insurance Company ("Republic") appeal the district
court's grant of summary judgment in favor of defendant and third
party plaintiff Insurance Company of North America ("INA"). INA
cross-appeals, seeking prejudgment interest pursuant to North Caro-
lina General Statutes § 24-5. We have jurisdiction pursuant to 28
U.S.C. § 1291, and we affirm in part, reverse in part and remand.

2

I

In 1992 Della construction of North Carolina, Inc. ("Della"), contracted to construct roads and bridges for the North Carolina Department of Transportation ("NCDOT"). INA served as Della's compensated surety and issued performance and payment bonds to guarantee completion of the NCDOT construction projects. In June 1993 Della informed INA that it could not finish the physical work or perform the administrative tasks required to complete the NCDOT contracts. Acting as a surety, INA assumed the contractual obligations for the NCDOT projects.

INA hired Alled Construction Company, Inc. ("Alled"), a corporation recently formed by Della's owner Steve Dellaquila, to complete the remaining work on the NCDOT projects. By late 1993, however, it had become clear that Alled would not be able to complete the NCDOT projects. In January 1994, INA contracted with Lord, a corporation owned by Dellaquila's wife Donna Lord Dellaquila, for the completion of the construction on NCDOT projects 108, 117 and 118 and the administrative work on nine other NCDOT projects.

Lord's obligations to INA for these projects were established in four separate contracts ("the Lord Agreements"). The Lord Agreements incorporated Lord's unit pricing schedule and January 12, 1994, proposal for the completion of each project, which the parties referred to as "Exhibit C." To guarantee completion of the projects, Republic executed performance and payment bonds as Lord's surety.

During construction, a dispute arose over the meaning of several provisions of the Lord Agreements. Lord claimed that the language in Exhibit C required INA to pay for the actual costs incurred in completing certain contract line items, even if Della and Alled had been fully compensated for unfinished work on those line items. INA maintained that the contract was for a fixed price and that Lord's compensation was limited to the sums listed in the contract. INA refused to pay the invoices for actual costs submitted by Lord after the completion of the NCDOT projects.

Lord filed suit in state court, alleging that INA breached the Lord Agreements by refusing to compensate Lord for the actual costs

incurred in completing the NCDOT projects. Lord also claimed that representations made by INA constituted fraud and violated North Carolina's unfair and deceptive trade practices statute. INA removed the action to federal court on the basis of diversity jurisdiction. INA cross-claimed against Lord and filed a third party suit against Republic. Among other things, INA sought reimbursement from Republic for Lord's failure to pay four subcontractors who recovered $482,850.41 in claims made against INA's payment bond.

INA moved for summary judgment on all claims. The district court held that the Lord Agreements were clear and unambiguous fixed price contracts and that Lord was not entitled to recover actual costs. The district court also found no support for Lord's fraud and unfair and deceptive trade practice claims and held Lord and Republic jointly and severally liable for the amount that subcontractors recovered from INA's payment bond.

Lord timely appealed. INA cross-appealed, seeking prejudgment interest from the date that the contract was breached.

II

We review the district court's grant of summary judgment de novo, construing the facts in the light most favorable to the nonmoving party. See Bullard v. Dalkon Shield Claimants Trust, 74 F.3d 531, 533 (4th Cir. 1996). Summary judgment is appropriate if the dispute does not involve a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. United States v. Ringley, 985 F.2d 185, 186 (4th Cir. 1993).

III

Lord argues that the district court erred in holding that the Lord Agreements constituted clear and unambiguous fixed price contracts. Lord also contends that summary judgment was improper because the Lord Agreements are reasonably susceptible to more than one rational interpretation. See Glover v. First Union National Bank of North Carolina, 428 S.E.2d 206, 209 (N.C. Ct. App. 1993).

4

In construing a contract, our primary goal is "to ascertain the intention of the parties." See id. We consider the language of the entire contract, see Yates v. Brown, 170 S.E.2d 477, 481 (N.C. 1969), as well as the language of all documents expressly incorporated into the contract, see Martin County v. R.K. Stewart & Son, Inc., 306 S.E.2d 118, 119 (N.C. Ct. App. 1983). Where contractual language is clear and unambiguous, we interpret the contract as a matter of law. See Runyon v. Paley, 416 S.E.2d 177, 186 (N.C. 1992).

Lord argues that the language of Exhibit C entitled Lord to recover the actual costs incurred in completing the NCDOT projects. In pertinent part, page 3 of Exhibit C provides:

> INA shall pay Lord Industries the total sum of $1,181,500 subject to adjustments as to the actual work performed in accordance with the actual Quantities and Unit Prices, and also subject to additions and deletions of Work Items and Supplemental Agreements, as made necessary by NCDOT, as well as any other Work Items deemed necessary by NCDOT for the completion of the Work.

Lord maintains that the phrase "any other Work Items deemed necessary by NCDOT for the completion of the Work" was intended to include the actual costs of completing contract line items for which Della and Alled had already received full compensation even though the work had not been completed.

Lord's proposed interpretation of this language cannot be reconciled with the other provisions of the Lord Agreements. Each of the four agreements contains an article titled "Fixed Price" that establishes Lord's compensation. The contract for the completion of the administrative work on nine NCDOT projects states that "INA agrees to pay Lord the sum of $57,098.12 as compensation for the services of Lord." The three contracts for the completion of physical work on NCDOT projects 108, 117 and 118 provide that the"`Fixed Price' shall consist of: The amount set forth in Exhibit C . . . plus that amount specified in any Change Orders initiated by[NCDOT] or Lord." Page 5 of Exhibit C lists the fixed prices for each contract as follows:

5

CONTRACT #1 (administrative work) $  57,098.12
CONTRACT #2 (Project # 108) $711,000.00
CONTRACT #3 (Project # 117) $320,306.18
CONTRACT #4 (Project # 118) $ 93,095.70
TOTAL FOR LORD AGREEMENTS $1,181,500.00

Page 5 of Exhibit C clearly establishes the sum $1,181,500.00 as the total fixed price of the Lord Agreements. This figure is also given in paragraph on Page 3 of Exhibit C on which Lord relies. None of the "Fixed Price" articles authorizes Lord to recover actual costs in addition to the fixed price of the contract.

The Termination and Requisition provisions confirm that the Lord Agreements were unambiguous fixed price contracts. The Termination provisions of the Lord Agreements provide that"INA shall reimburse Lord for any unpaid Fixed Price due Lord" if INA elects to terminate the contracts. The Termination provisions do not authorize recovery of actual costs incurred by Lord in the event of termination.

Moreover, the Requisition provisions of the Lord Agreements clearly limit Lord's compensation to the amount of revenue that INA receives from NCDOT. The three contracts requiring the completion of construction work on NCDOT projects 108, 117 and 118 provide that "INA will adjust payment to Lord, either upward or downward, to ensure that payments to Lord for work performed are in the same amount, and percentages, as payment from [NCDOT] to INA." These provision do not authorize Lord to recover additional costs incurred while completing the NCDOT projects.

It is clear from the Fixed Price, Termination and Requisition provisions of the Lord Agreements that the parties entered into contracts for a fixed price. The phrase "any other Work Items deemed necessary by NCDOT for the completion of the Work" in Exhibit C fails to transform these unambiguous contracts into obligations for additional costs. Instead, the quoted language merely accounts for additional line items not covered by the Lord Agreements. The district court correctly determined that the Lord Agreements constituted clear and unambiguous fixed price contracts.

6

IV

Lord argues that the district court erred in granting summary judgment on Lord's claim for fraud. To demonstrate fraud under North Carolina law, a plaintiff must show (1) a false representation, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive,(5) and results in damages. See Myers & Chapman, Inc. v. Thomas G. Evans, Inc., 374 S.E.2d 385, 391 (N.C. 1988) (quoting Ragsdale v. Kennedy, 209 S.E.2d 494, 500 (N.C. 1974)). The Federal Rules of Civil Procedure require that allegations of fraud be stated with particularity. Fed. R. Civ. P. 9(b). North Carolina law similarly recognizes that "[m]ere generalities and conclusory allegations of fraud will not suffice" to state a claim. Moore v. Wachovia Bank & Trust Co., 226 S.E.2d 833, 835 (N.C. Ct. App. 1976).

Lord alleges that INA committed fraud by removing a page from Exhibit C and substituting a different page after Donna Lord Dellaquila had signed the Lord Agreements. Even if the contract was altered, however, Lord does not claim that it was deceived by the substitution. Cf. McGahren v. Saenger, 456 S.E.2d 852, 855 (N.C. Ct. App. 1995). Moreover, INA has never attempted to rely on the provisions of the substituted page in construing the contract. Instead, INA acknowledges that all of Exhibit C, including the removed page, was expressly incorporated into the Lord Agreements. Finally, Lord has not alleged that it was damaged by the substitution.

Lord also claims that INA committed fraud by promising to pay Lord's actual construction costs. Lord does not identify any specific misrepresentations made by INA or a particular time and place where such misrepresentations were made. See Claggett v. Wake Forest University, 486 S.E.2d 443, 447 (N.C. Ct. App. 1997); Trull v. Central Carolina Bank & Trust Co., 450 S.E.2d 542, 545 (N.C. Ct. App. 1994). Moreover, because the contracts unambiguously limited Lord's compensation to the fixed price in Exhibit C, reliance on contrary statements or actions by INA's agents was not justified. See Helms v. Holland, 478 S.E.2d 513, 517 (N.C. Ct. App. 1996) ("Justifiable reliance is an essential element of. . . fraud."). Finally, Lord has not shown that any statements by INA's agents were made with intent to deceive. See Strum v. Exxon Co. , 15 F.3d 327, 331 (4th

Cir. 1994); see also Claggett, 486 S.E.2d at 447. Under these circumstances, Lord's mere allegations of fraud are insufficient to withstand a motion for summary judgment.

V

Lord contends that the district court erred in granting INA's motion for summary judgment on Lord's unfair and deceptive trade practices claim. North Carolina General Statutes § 75-1.1 prohibits "unfair or deceptive acts or practices in or affecting commerce." To prevail under § 75-1.1, Lord must show "(1) an unfair or deceptive act or practice, . . . (2) in or affecting commerce, (3) which proximately caused actual injury." Spartan Leasing, Inc. v. Pollard, 400 S.E.2d 476, 482 (N.C. Ct. App. 1991). Under North Carolina law, a practice is unfair "if it offends the established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Jennings Glass Co., Inc. v. Brummer, 362 S.E.2d 578, 584 (N.C. Ct. App. 1987). The concept of unfairness also "includes the concept of `deception.'" Id. Section 75-1.1 cannot be used "to reform or avoid what [plaintiffs] consider a bad contract," however. Pappas v. NCNB National Bank of North Carolina, 653 F. Supp. 699, 707 (M.D.N.C. 1987); see also United Roasters, Inc. v. Colgate-Palmolive Co., 649 F.2d 985, 992 (4th Cir. 1981).

Lord alleges that INA engaged in unfair and deceptive trade practices by removing a page from Exhibit C of the Lord Agreements after Donna Lord Dellaquila had already signed the contracts and by promising to pay the actual costs of completing the NCDOT projects. As discussed above, Lord was not deceived by the removal or substitution of a page in Exhibit C. Moreover, the Lord Agreements clearly limited Lord's compensation to the fixed price contained in Exhibit C. In light of these facts, Lord has not explained how INA's actions were deceptive, immoral, unethical, oppressive, unscrupulous, injurious to consumers or violative of public policy. The district court correctly granted summary judgment on this issue.

VI

Lord and Republic contend that the district court erred in granting summary judgment on INA's counterclaim for reimbursement of

8

amounts paid to subcontractors. Lord and Republic waived this argument by failing to raise it in the district court. See Karpel v. Inova Health System Services, 134 F.3d 1222, 1227 (4th Cir. 1998). Also, throughout the course of this litigation, Lord and Republic have repeatedly admitted that INA was entitled to prevail on this issue. The summary judgment order which was entered on INA's counterclaim was proper.

VII

In the cross-appeal, INA argues that the district court erred by failing to award prejudgment interest on INA's counterclaim from the date that the contract was breached. North Carolina General Statutes § 24-5 unambiguously provides that the amount awarded for a breach of contract "bears interest from the date of the breach." N.C. Gen. Stat. § 24-5 (1997); see also Noland Co., Inc. v. Poovey, 295 S.E.2d 238, 239 (N.C. Ct. App. 1982). We reverse the district court's denial of prejudgment interest on INA's counterclaim because the statute is mandatory. We remand for the calculation of interest.

The judgment of the district court is

AFFIRMED IN PART, REVERSED IN PART AND REMANDED .

9