COBRA CAPITAL, LLC, Plaintiff,

v.

RF NITRO COMMUNICATIONS, INC., n/f/a RF Micro Devices, Inc., and RF Micro Devices, Inc., Defendants.

No. 1:02CV00491.

United States District Court, M.D. North Carolina.

March 17, 2003.

Durant M. Glover, Frassineti & Glover, Greensboro, NC, Vincent T. Borst, Askounis & Borst, P.C., Chicago, IL, for Plaintiff.

Ronald R. Davis, Womble Carlyle Sandridge & Rice Pod 84, Winston–Salem, NC, for Defendants.

### JUDGMENT

TILLEY, District Judge.

On December 18, 2002, the United States Magistrate Judge's Recommendation was filed and notice was served on the parties pursuant to 28 U.S.C. § 636(b). No objections were received by the court within the time prescribed by the statute.

The court hereby adopts the Magistrate Judge's Recommendation.

IT IS THEREFORE ORDERED AND ADJUDGED that Defendants' motion to dismiss [Pleading No. 22] be **GRANTED** as to all claims and all Defendants, and that this action be, and is hereby, dismissed with prejudice.

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

SHARP, United States Magistrate Judge.

This matter comes before the Court on the motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by Defendants RF Nitro Communications, Inc. n/k/a RF Micro Devices, Inc. ("RF Nitro") and RF Micro Devices, Inc. ("RF Micro")(collectively "Defendants"). (Pleading No. 22.) Plaintiff Cobra Capital LLC ("Cobra") has responded in opposition to Defendants' motion, and Defendants have filed a reply. The motion is ready for a ruling.

### I. Procedural History

Cobra initiated this action on December 20, 2001 in the Circuit Court of Cook County, Illinois, alleging that (1) RF Nitro breached an alleged equipment lease with Cobra and (2) RF Micro tortiously interfered with the alleged lease between RF Nitro and Cobra. Cobra's Complaint sought $493,655.93 in damages with post-judgment interest. On January 22, 2002, Defendants removed the case to the United States District Court for the Northern District of Illinois based on diversity of citizenship. Shortly thereafter, Defendants moved to dismiss Cobra's Complaint on various grounds, including lack of personal jurisdiction. On June 7, 2002, the Honorable Matthew F. Kennelly of the Northern District of Illinois found that Defendants had not had sufficient minimum contacts with Illinois to justify the

court's exercise of personal jurisdiction over them. Rather than dismiss the case, Judge Kennelly denied Defendants' motion to dismiss the case as moot and granted Defendants' motion to transfer the case to this Court, where personal jurisdiction over Defendants exists. In lieu of an answer, Defendants timely filed the instant motion to dismiss and a memorandum in support.

## II. Statement of Facts

Cobra is a Delaware limited liability company engaged in the business of brokering equipment leases with a principal place of business in Oak Brook, Illinois. (Compl.¶ 1, Exs.1, 2.) RF Nitro was a Delaware corporation engaged in the manufacture of computer equipment with a principal place of business in Charlotte, North Carolina. *Id.* ¶ 2. At some point during the time relevant to this lawsuit, RF Micro, a North Carolina corporation with a principal place of business in Greensboro, North Carolina, acquired RF Nitro in a stock purchase. *Id.* ¶¶ 2–3.

In August 2001, Cobra and RF Nitro began negotiating the terms of a lease to finance RF Nitro's purchase of computer manufacturing equipment from various vendors. (Compl.¶ 8.) On September 27, 2001, Cobra and RF Nitro signed a "Lease Financing Proposal" ("Proposal") drafted by Cobra. (Compl.¶ 9, Ex. 1.) The first paragraph of the Proposal provides as follows:

> Cobra Capital LLC (COBRA) is pleased to propose lease financing on various equipment of RF Nitro Communications Inc. Please note *this proposal is subject to the approval of COBRA and is not considered to be a commitment.*

(Compl., Ex. 1.)(emphasis added). The Proposal then sets out the proposed lease terms, including the monetary amount of the lease, the length of the lease, the equipment subject to the lease, a purchase option, the amount of the monthly payment, advance payments, events of default, conditions, reporting requirements and the expiration date.

Along with RF Nitro's signing of the Proposal, RF Nitro's Assistant Vice President of Finance, Paul Schmid, requested that COBRA "expedite" the lease documents. (Compl.¶ 10, Ex. 3.) On September 28, 2001, Joy Harris, a Lease Administrator for COBRA, transmitted the lease documents, along with a cover letter listing the remaining actions necessary to complete the lease transaction. *Id.*, Ex. 2. The letter indicated that the following items needed completion:

1) **COBRA** Lease Agreement with Schedule A

2) Addendum (FMV)

3) **COBRA** Lease Application

4) Corporate Resolution

5) Disclaimer of Ownership

6) Landlord Waiver

7) Lease Confirmation

8) ACH Authorization

9) UCC—Notification Letter

10) Insurance Requirements (please send copy of Insurance certificate)

11) **Please send a copy of your drivers license**

12) **Please send a check in the total amount of *$59,395.02;* which represents the 1st and last two advance payments of *$14,922.84* plus a *$1,500.00* documentation fee and the balance of the 25% down-payment to the vendor of *$13,126.50.***

13) Please photocopy documents for your file.

14) Please return a copy of the company's Articles of Incorporation and Tax Exemption certificate with the signed documents.

(Compl., Ex. 2.)(emphasis in original). Following receipt of the lease documents, Schmid sent a copy of the documents to Teledyne Energy Systems, one of the vendors of the lease equipment, to confirm that Cobra would pay for the equipment. (Compl., Ex. 4.) Another vendor, Hydro Services and Supplies, issued a paid invoice for the equipment identifying Cobra as the equipment's purchaser. (Compl., Ex. 5.) In addition, Cobra filed UCC–1 financing statements for the equipment. (Compl.¶ 12.)

At some point during the course of events giving rise to this litigation, RF Micro acquired RF Nitro in a stock purchase. (Compl.¶ 2.) On October 18, 2001, RF Nitro informed Cobra that it would not consummate the equipment lease and inquired about a "breakage fee." (Compl.¶ 15.) Schmid informed Cobra's representatives that in connection with RF Micro's acquisition of RF Nitro's stock, RF Nitro had disclosed the terms and conditions of the proposed equipment lease between itself and Cobra, and that RF Micro had prohibited RF Nitro from consummating the lease. (Compl.¶ 16.) RF Nitro, or its successor RF Micro, subsequently purchased for cash some of the Teledyne equipment to be financed under the lease with Cobra. (Compl.¶ 14.) Cobra has demanded performance from RF Micro and RF Nitro, and both have refused to execute the equipment lease documents or to consummate the lease. (Compl.¶¶ 13, 18.)

### III. Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the complaint. *Randall v. United States*, 30 F.3d 518, 522 (4th Cir.1994), *cert. denied*, 514 U.S. 1107, 115 S.Ct. 1956, 131 L.Ed.2d 849 (1995). Accordingly, such motions "should be granted only in very limited circumstances." *Rogers v. Jefferson–Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir. 1989). When considering a motion to dismiss, the plaintiff's allegations must be taken as true. *Revene v. Charles County Commissioners*, 882 F.2d 870, 873 (4th Cir.1989). Therefore, a motion to dismiss under Rule 12(b)(6) should be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *DeSole v. United States*, 947 F.2d 1169, 1177 (4th Cir.1991)(quoting *Coakley & Williams, Inc. v. Shatterproof Glass Corp.*, 706 F.2d 456, 457 (4th Cir. 1983)).

### IV. Discussion

Where jurisdiction is founded on the diversity of the parties' citizenship, the Court applies the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In deciding choice-of-law questions, the North Carolina courts have recognized two different approaches: the "most significant relationship" test and the *"lex loci delicti"* test. *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 964 F.Supp. 956, 959 (M.D.N.C.1997), *aff'd in part and rev'd in part on other grounds*, 194 F.3d 505 (4th Cir.1999). Under the most significant relationship test, the court looks to "the law of the state having the most significant relationship to the occurrence giving rise to the action." *Andrew Jackson Sales v. Bi–Lo Stores, Inc.*, 68 N.C.App. 222, 225, 314 S.E.2d 797 (1984). The *lex loci delicti* test requires application of the law where the last act occurred giving rise to the alleged injury. *United Virginia Bank v. Air–Lift Associates, Inc.*, 79 N.C.App. 315, 321, 339 S.E.2d 90 (1986). Under either test, North Carolina law should apply to this action. Defendant RF Micro is a North Carolina corporation, and both RF Nitro and RF

Micro maintain their principal place of business in North Carolina. Moreover, the injuries in this case, the alleged breach of contract and interference with contract, both took place in North Carolina. Moreover, Defendants take the position that North Carolina law should apply to this action, and Plaintiff does not appear to contest this choice of law. Accordingly, the Court will apply North Carolina law in deciding this matter.

### A. Cobra's Breach of Contract Claim Against RF Nitro

 In order to establish a claim for breach of contract, Cobra must show (1) that a valid contract existed between the parties; (2) that RF Nitro breached the terms of the contract; (3) the facts constituting the breach; and (4) that damages resulted from such breach. Claggett v. Wake Forest University, 126 N.C.App. 602, 608, 486 S.E.2d 443 (1997). RF Nitro moves to dismiss Cobra's breach of contract claim on the ground that Cobra's allegations fail to make a showing that a valid contract existed between Cobra and RF Nitro.[1] RF Nitro advances three arguments in support of its position: (1) the Proposal, by its terms, provides that it was not a commitment, much less a contract; (2) there was no meeting of the minds sufficient to form a contract; and (3) a "liquidated damage" provision in the Proposal shows there was no contract.

On review of the documents appended to Cobra's Complaint, the Court concludes as a matter of law that the Proposal's express terms demonstrate that it was not intend-ed by the parties to be a binding contract.[2] The very first paragraph of the Proposal states that Cobra "is pleased to *propose* lease financing ...*" and cautions, "Please note this proposal is *subject to the approval of COBRA* and is *not considered to be a commitment.*" (Compl., Ex. 1.)(emphasis added). Under the subsection "EQUIPMENT," the equipment listed is deemed "subject to COBRA's approval." *Id.* Significantly, under the subsection "ADVANCE PAYMENTS," Cobra gives each party a remedy in the event that the other elects not to consummate the transaction:

> *In the event COBRA does not approve this proposal,* $1,000 will be refunded to you. In the event COBRA approves this proposal *but Lessee elects not to consummate the transaction,* the entire $1,500 will be considered earned by COBRA.

*Id.* (emphasis added). Clearly, Cobra, the party who drafted the Proposal, did not contemplate that Cobra was committed to the transaction *or* that RF Nitro's signature on the Proposal would bind either party.

 Notwithstanding the express language of the Proposal, Cobra now argues that the Proposal created a binding contract because only "ministerial" acts remained to finalize the lease transaction. The Court cannot agree that the acts remaining to be performed to finalize the lease could reasonably be found to be "ministerial." A letter from Joy Harris, Cobra's Lease Administrator, to Jeffrey Shealy, RF Nitro's President, detailed the

---

1. RF Nitro additionally moves to dismiss Cobra's breach of contract claim on the ground that even if the Proposal were deemed a contract, conditions precedent to the formation of a valid contract were not met. Due to the Court's findings in regard to RF Nitro's first argument that no contract existed, the Court does not reach RF Nitro's arguments regarding conditions precedent.

2. Due to the Court's findings regarding the Proposal's terms, the Court does not reach RF Nitro's argument regarding a "meeting of the minds."

acts required to be completed and the documents to be signed:

1) **COBRA** Lease Agreement with Schedule A
2) Addendum (FMV)
3) **COBRA** Lease Application
4) Corporate Resolution
5) Disclaimer of Ownership
6) Landlord Waiver
7) Lease Confirmation
8) ACH Authorization
9) UCC—Notification Letter
10) Insurance Requirements (please send copy of Insurance certificate)
11) **Please send a copy of your drivers license**
12) **Please send a check in the total amount of $59,395.02; which represents the 1st and last two advance payments of $14,922.84 plus a $1,500.00 documentation fee and the balance of the 25% down-payment to the vendor of $13,126.50.**
13) Please photocopy documents for your file.
14) Please return a copy of the company's Articles of Incorporation and Tax Exemption certificate with the signed documents.

(Compl., Ex. 2.) The mere fact that this list contains 14 separate actions that must be taken prior to consummation of the lease transaction defeats Cobra's "ministerial" argument. Moreover, it is fanciful to characterize as "ministerial" the payment of nearly $60,000.00 and the execution of a lease agreement containing 27 sections in fine print, nearly all of which are not present in the Proposal.

As the express terms of the Proposal demonstrate that it was not intended by either party to create a binding contract, Cobra can prove no set of facts which would entitle it to relief for breach of contract. **IT IS THEREFORE RECOMMENDED** that Defendant RF Nitro's motion to dismiss Cobra's breach of contract claim be granted.

**B.** *Cobra's Tortious Interference with Contract Claim Against RF Micro*

■ At the outset, the Court notes that Defendants have taken the position that Cobra's claims for tortious interference with contract and tortious interference with prospective economic advantage are considered under North Carolina law to be one claim, citing *Coleman v. Whisnant*, 225 N.C. 494, 506, 35 S.E.2d 647 (1945). However, the Court does not read *Coleman* so broadly. *Coleman* includes the following language:

> We think the general rule prevails that unlawful interference with the freedom of contract is actionable, whether it consists in maliciously procuring breach of a contract, or in preventing the making of a contract when this is done, not in the legitimate exercise of the defendant's own rights, but with design to injure the plaintiff, or gaining some advantage at his expense.

*Id.* In the Court's view, this passage merely holds that both interference with an existing and a prospective contract are actionable in North Carolina, but does not mandate that they be treated as one claim. This interpretation of *Coleman* is supported by the North Carolina Pattern Jury Instructions, which provide standard jury instructions for two *separate* torts— "Wrongful Interference with Contracts" and "Inducing a Person Not to Enter Into a Contract." North Carolina Conference of Superior Court Judges, *North Carolina Pattern Jury Instructions for Civil Cases* §§ 807.00, 807.10 (1988). Further, as recently as 1999 in *Dalton v. Camp*, 135 N.C.App. 32, 40, 519 S.E.2d 82 (1999), the

North Carolina Court of Appeals discussed the plaintiff's claims for interference with contractual and business relations and interference with prospective economic advantage as two separate claims, as had the trial court below. Accordingly, the Court will treat Cobra's claim for tortious interference with contract separately from its claim for tortious interference with prospective economic advantage.

■■■ In order to establish a claim for tortious interference with contract, Cobra must show that (1) Cobra was a party to a valid contract; (2) RF Micro had knowledge of Cobra's contract; (3) RF Micro intentionally induced the other party to the contract (RF Nitro) not to perform the contract with Cobra; (4) RF Micro acted without justification; and (5) RF Micro's act caused Cobra actual damages. *Childress v. Abeles*, 240 N.C. 667, 674, 84 S.E.2d 176 (1954). However, Cobra's Complaint fails to sufficiently plead element one, a valid contract. As the Court has previously found that the Proposal did not constitute a contract between Cobra and RF Nitro, Cobra has not alleged the existence of a valid contract with which RF Micro could have tortiously interfered. IT IS THEREFORE RECOMMENDED that Cobra's tortious interference with contract claim be dismissed.

C. *Cobra's Tortious Interference with Prospective Economic Advantage Claim Against RF Micro*

■■■ In order to establish a claim for tortious interference with prospective

economic advantage, Cobra must show that (1) a valid contract would have existed between Cobra and RF Nitro if it had not been for RF Micro's conduct; (2) RF Micro maliciously induced RF Nitro not to enter into the contract with Cobra; and (3) RF Micro's conduct caused Cobra to suffer actual damages. *Spartan Equip. Co. v. Air Placement Equip. Co.*, 263 N.C. 549, 559, 140 S.E.2d 3 (1965). Furthermore, even where there is actual interference, a motion to dismiss should be granted where the interference is justified or privileged. *Peoples Security Life Ins. Co. v. Hooks*, 322 N.C. 216, 220, 367 S.E.2d 647 (1988). In other words, Cobra must make a showing that RF Micro "acted with malice and for a reason not reasonably related to the protection of a legitimate business interest ..." *Smith v. Ford Motor Co.*, 289 N.C. 71, 94, 221 S.E.2d 282 (1976); *see also Cameron v. New Hanover Memorial Hosp., Inc.*, 58 N.C.App. 414, 439, 293 S.E.2d 901, *appeal dismissed, review denied*, 307 N.C. 127, 297 S.E.2d 399 (1982).

■■■ In this case, Cobra's Complaint contains no factual allegations that would raise an inference of malice or an illegitimate business interest on the part of RF Micro. No reasonable inference can be drawn from any of the factual allegations in the Complaint, or the exhibits attached thereto, that RF Micro pursued an illegitimate business interest or was motivated by a malicious wish to injure Cobra by merging with RF Nitro and determining that the proposed lease was not in its economic interest.[3] Nor does Cobra's bare

---

3. Although the Complaint does not give a precise date, Cobra alleges that RF Micro acquired RF Nitro in a stock purchase "[d]uring the course of events giving rise to this litigation...." (Compl.¶ 2.) The last event giving rise to the litigation occurred on October 18, 2001, when RF Nitro informed Cobra that it would not enter into the lease transaction. (Compl.¶ 15.) Therefore, according to

Cobra's own pleadings, the merger agreement between RF Micro and RF Nitro had to date to on or before October 18, 2001, and an inference is thus raised that as of the date RF Nitro refused to finalize the lease, it had already merged or agreed to merge with RF Micro. Thus, when RF Nitro disclosed the terms of the proposed lease financing to RF Micro and RF Micro instructed RF Nitro not

allegation that an RF Micro employee, William Pratt, served on the RF Nitro Board of Directors during the time relevant to this action, in and of itself, give rise to an inference that RF Micro acted maliciously or with an intent to injure Cobra. (Compl.¶ 17.)

As Cobra's Complaint fails to sufficiently plead malice or an illegitimate business interest on the part of RF Micro, **IT IS RECOMMENDED** that Cobra's tortious interference with prospective economic advantage claim be dismissed.

## V. Conclusion

For reasons set forth above, **IT IS RECOMMENDED** that Defendants' motion to dismiss (Pleading No. 22) be granted as to all claims and all Defendants; and that this case be dismissed with prejudice.

December 18, 2002.

to consummate the lease, RF Micro was essentially protecting *its own economic interests*. This is an independent ground on which to dismiss Cobra's tortious interference with prospective economic advantage claim, as this claim requires a *third party* to interfere with the prospective economic advantage, and not an entity who, by virtue of a merger, had become a party to the proposed contract. *Wagoner v. Elkin City Schools' Bd. of Ed.,* 113 N.C.App. 579, 587, 440 S.E.2d 119 (1994); *Waters v. Collins & Aikman Prods. Co.,* 208 F.Supp.2d 593, 595 (W.D.N.C.2002) (holding that it is well-settled under North Carolina law that a party to a contract cannot be liable for tortious interference).