ZANNIE GARNER, PLAINTIFF v. RENTENBACH CONSTRUCTORS INCORPORATED, DEFENDANT AND THIRD-PARTY PLAINTIFF v. ALLIED CLINICAL LABORATORIES, THIRD-PARTY DEFENDANT

No. COA97-906

(Filed 2 June 1998)

**1. Labor and Employment § 77 (NCI4th)— employee drug testing—noncompliance with statute—wrongful discharge**

The termination of an at-will employee based upon a positive drug test conducted pursuant to the employer's drug testing policy can constitute a wrongful discharge when the drug test was not performed consistently with a state statute.

GARNER v. RENTENBACH CONSTRUCTORS, INC.

[129 N.C. App. 624 (1998)]

**2. Labor and Employment § 77 (NCI4th)— employee drug testing—laboratory not properly certified—wrongful discharge**

The statutory requirement that employee drug testing be performed by a laboratory certified consistently with the statute is an express policy declaration of the legislature, and any testing inconsistent with the statute violates public policy so that the discharge of an at-will employee based on the results of such a test supports a claim for wrongful discharge. N.C.G.S. § 95-232.

**3. Labor and Employment § 77 (NCI4th)— at-will employee— wrongful discharge—public policy violation**

Wrongful discharge claims for at-will employees do not exist only when the discharge is the result of an employee's refusal to violate the law upon the request of the employer or the discharge is the result of the employee engaging in a legally protected activity. Prior decisions do not preclude a wrongful discharge claim where the discharge is based on some unlawful activity of the employer or some activity of the employer in violation of public policy.

**4. Labor and Employment § 77 (NCI4th)— employee drug testing—statutory violations—Department of Labor claims—wrongful discharge claim not preempted**

The statutory authorization of the Commissioner of Labor to investigate and file claims against employers who violate the drug screening procedures of N.C.G.S. § 95-232 did not preempt plaintiff at-will employee's action against the employer for wrongful discharge based upon the public policy exception as a consequence of a urine drug test conducted inconsistently with a state statute.

Appeal by plaintiff, Zannie Garner, from order filed 27 February 1997 by Judge Peter M. McHugh in Guilford County Superior Court. Heard in the Court of Appeals 17 March 1998.

*Mark Floyd Reynolds, II, for plaintiff appellant.*

*Carruthers & Roth, P.A., by Kenneth R. Keller, for Defendant Appellee Rentenbach Constructors, Inc.*

*Ogletree, Deakins, Nash, Smoak & Stewart, P.C., by Guy F. Driver, Jr., for Third-Party Defendant Appellee Allied Clinical Laboratories.*

**GARNER v. RENTENBACH CONSTRUCTORS, INC.**

[129 N.C. App. 624 (1998)]

GREENE, Judge.

Zannie Garner (plaintiff) appeals from an order of the trial court granting Rentenbach Constructors Incorporated (defendant) summary judgment on the plaintiff's claims for wrongful discharge and intentional infliction of emotional distress.[1]

The facts are as follows: The plaintiff was hired by the defendant in July of 1993 as a carpenter. There is no evidence in the record that the plaintiff was hired pursuant to a contract and the plaintiff does not contend that he was not an at-will employee. In June of 1994, the defendant provided the plaintiff with a copy of a substance abuse policy which was being implemented. Approximately six weeks later, on 26 July 1994, the plaintiff was asked to submit to random drug screening by giving a urine sample and the plaintiff agreed to do so. On 8 August 1994, the defendant terminated the plaintiff's employment for violating the company's substance abuse policy because he had tested positive for drug use.

In his complaint the plaintiff alleged that the defendant had not followed the drug testing requirements set forth by N.C. Gen. Stat. § 95-232. Among other things, the plaintiff alleged that Allied Clinical Laboratories (ACL), the laboratory used by the defendant to conduct the laboratory tests on the urine sample, did not qualify as an "approved" laboratory pursuant to the statute. At an Employment Security Commission hearing, Wayne Amman (Amman), the Assistant Safety Director for the defendant who was responsible for implementing the drug screening program, testified that an ACL representative had specifically informed him that ACL was "certified," however, Amman did not question the type of certification held by ACL to verify that it was "approved" pursuant to the definition in N.C. Gen. Stat. § 95-231. Testimony by ACL's representative, Dr. Evan Holzberg, revealed that ACL was not "approved" as required by the statute.

[1] The dispositive issue is whether the termination of an at-will employee based on a positive reading of a drug test conducted pursuant to the employer's drug testing policy can constitute a wrongful discharge when the drug test was not performed consistent with a state statute.

---

1. Although the plaintiff appeals from the summary judgment dismissing his wrongful discharge and intentional infliction of emotional distress claims, he has abandoned his emotional distress claim by not addressing it in his appellate brief, and we therefore do not address that claim. N.C.R. App. P. 28(b) (5).

## GARNER v. RENTENBACH CONSTRUCTORS, INC.

[129 N.C. App. 624 (1998)]

Summary judgment shall be granted if there are no genuine issues of material fact and the pleadings and evidence show that a party is entitled to a judgment as a matter of law. *Kessing v. Mortgage Corp.*, 278 N.C. 523, 534, 180 S.E.2d 823, 830 (1971). All of the evidence is viewed in the light most favorable to the non-moving party. *McMurry v. Cochrane Furniture Co.*, 109 N.C. App. 52, 54, 425 S.E.2d 735, 736 (1993).

Our legislature has set forth procedures required of employers who choose to conduct drug screening on their employees. The purpose of the statutes is "to establish procedural and other requirements for the administration of controlled substance examinations" because "individuals should be protected from unreliable and inadequate examinations and screening." N.C.G.S. § 95-230 (1993). N.C. Gen. Stat. § 95-232 provides that "[a]n examiner who requests or requires an examinee to submit to a controlled substance examination shall comply with the procedural requirements set forth in [that] section." N.C.G.S. § 95-232 (Supp. 1997).[2] One of the requirements that examiners must follow is that only "approved" laboratories may be used for the screening and confirmation of the samples collected for examination. N.C.G.S. § 95-232(c) (1993).[3] An "approved" laboratory is "a clinical chemistry laboratory which performs controlled substances testing and which has demonstrated satisfactory performance in the forensic urine drug testing programs of the United States Department of Health and Human Services or the College of American Pathologists for the type of tests and controlled substances being evaluated." N.C.G.S. § 95-231(1) (1993). Violations of the procedural requirements are to be investigated by the Commissioner of Labor and any actions to recover penalties are to be brought by the Commissioner of Labor. N.C.G.S. § 95-234 (1993).

"[I]n the absence of a contractual agreement between an employer and an employee establishing a definite term of employ-

2. "Examiner" is defined as the "person, firm, or corporation, . . . who is the employer or prospective employer of the examinee and who performs or has performed by an approved laboratory a controlled substance examination." N.C.G.S. § 95-231(2) (1993). "Examinee" is defined as "an individual who is an employee of the examiner or an applicant for employment with the examiner and who is requested or required by an examiner to submit to a controlled substance examination." N.C.G.S. § 95-231(3).

3. This statue has been amended by our legislature; however, the changes do not affect this case. Effective 6 July 1995, an examiner has the option of "(1) performing the screening on-site for prospective employees, provided that samples which demonstrate a positive drug test result are sent to an approved laboratory for confirmation, or (2) having an approved laboratory perform both the screening and confirmation tests as provided in this section." N.C.G.S. § 95-232(c) (Supp. 1997).

GARNER v. RENTENBACH CONSTRUCTORS, INC.

[129 N.C. App. 624 (1998)]

ment, the relationship is presumed to be terminable at the will of either party without regard to the quality of performance of either party." *Kurtzman v. Applied Analytical Industries, Inc.*, 347 N.C. 329, 331, 493 S.E.2d 420, 422 (1997), *reh'g denied*, 347 N.C. 586, —— S.E.2d —— (1998). In general, an at-will employee has no claim for wrongful discharge. *Sides v. Duke University*, 74 N.C. App. 331, 336, 328 S.E.2d 818, 823 (1985), *overruled on other grounds by Kurtzman*, 347 N.C. 329, 493 S.E.2d 420. Exceptions to this general rule have been recognized and, therefore "while there may be a right to terminate [at-will employment] for no reason, or for an arbitrary or irrational reason, there can be no right to terminate such [employment] for an unlawful reason or purpose that contravenes public policy." *Id.* at 342, 328 S.E.2d at 826. Any exceptions to the at-will employment doctrine, however, "should be adopted only with substantial justification grounded in compelling considerations of public policy." *Kurtzman*, 347 N.C. at 334, 493 S.E.2d at 423.

Public policy has been defined to be "the principle of law that holds no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good." *Johnson v. Mayo Yarns, Inc.*, 126 N.C. App. 292, 296, 484 S.E.2d 840, 842-43, *disc. review denied*, 346 N.C. 547, 488 S.E.2d 802 (1997). Although there is no specific list of what actions constitute violations of public policy, "at the very least public policy is violated when an employee is fired in contravention of express policy declarations contained in the North Carolina General Statutes." *Amos v. Oakdale Knitting*, 331 N.C. 348, 353, 416 S.E.2d 166, 169 (1992).

[2] In this case, there is no dispute that the plaintiff was an at-will employee. Furthermore, there is no dispute that the plaintiff was discharged as a consequence of a positive reading on a urine drug test that was required as a condition of employment, and that this test was conducted inconsistently with a specific state statute.[4] The plaintiff claims that the statutory requirement that employee drug testing be performed by a laboratory certified consistent with the statute is an express policy declaration of the legislature and any testing inconsistent with the statute therefore violates public policy. We agree. The General Assembly has explicitly declared its purpose for enacting the

---

4. The defendants contend that the violation of section 95-232 was "inadvertent" and thus they should not be held responsible for such violation. We disagree. The statute does not require that the violations be intentional. N.C.G.S. § 95-234 ("Any examiner who violates the provisions of this Article shall be subject to a civil penalty . . . ."). Thus even "inadvertent" or unintentional violations are inconsistent with the statute.

employee drug screening procedures: To protect employees from "unreliable and inadequate examinations and screening for controlled substances." N.C.G.S. § 95-230. To insure that employee drug testing is reliable the legislature requires that the screening be conducted in laboratories certified consistent with the statute. N.C.G.S. § 95-232. It follows that employee drug testing inconsistent with the requirements of the statute violates public policy and that any discharge based on the results of such a test supports a claim for wrongful discharge. Summary judgment for the defendant was therefore error.

[3] In so holding, we reject the defendant's argument that wrongful discharge claims for at-will employees exist only when the discharge is the result of an employee's refusal to violate the law upon the request of the employer or the discharge is the result of the employee engaging in a legally protected activity. We acknowledge that the previous decisions of our courts recognizing wrongful discharge claims by at-will employees have presented facts consistent with the defendant's argument. *See Roberts v. First-Citizens Bank and Trust Co.*, 124 N.C. App. 713, 478 S.E.2d 809 (1996), *appeal withdrawn*, 345 N.C. 755, 487 S.E.2d 758 (1997) (employee fired for refusing to cash certificate of deposit without notice to debtors); *Amos*, 331 N.C. 348, 416 S.E.2d 166 (employee discharged for refusing to work below minimum wage); *Coman v. Thomas Manufacturing Co.*, 325 N.C. 172, 381 S.E.2d 445 (1989) (employee discharged for refusing to violate Department of Transportation regulations concerning driving time of truck drivers by refusing to falsify time logs); *Sides*, 74 N.C. App. 331, 328 S.E.2d 818 (employee fired for refusing to testify untruthfully or incompletely in lawsuit against her employer). We do not, however, read these cases as precluding a wrongful discharge claim where the discharge is based on some unlawful activity of the employer or some activity of the employer in violation of public policy.

[4] We also reject the defendant's argument that the plaintiff is precluded from filing this claim because the Commissioner of Labor is authorized to investigate and file claims against employers who violate the drug screening procedures of section 95-232. The "availability of alternate remedies does not prevent a plaintiff from seeking tort remedies for wrongful discharge based on the public policy exception" unless federal legislation preempts the common law claim [for wrongful discharge] or our State legislature intended to supplant the [wrongful discharge] claim with exclusive statutory remedies. *Amos*, 331 N.C. at 356-57, 416 S.E.2d at 171.

In this case, we are not aware of any federal law that preempts this wrongful discharge claim and the defendant has not cited any. Furthermore, the legislature has not provided that the actions by the Commissioner of Labor are the exclusive remedy. The plaintiff is therefore not preempted by either federal or state law from filing this wrongful discharge claim.

Reversed and remanded.

Judges WALKER and TIMMONS-GOODSON concur.