RICKY ADAM RIDENHOUR, PLAINTIFF-APPELLANT v. INTERNATIONAL BUSINESS MACHINES CORPORATION AND CHET GURSKI, DEFENDANTS-APPELLEES

No. COA98-361

(Filed 16 March 1999)

### 1. Fraud— constructive fraud—breach of fiduciary duty—failure to show benefit

In plaintiff's action against his former employer and its plant manager for constructive fraud based on breach of fiduciary duty after defendants failed to keep confidential defendant's identity as the person who gave the employer information about a supplier's fraud, benefits plaintiff claims were allegedly received by defendants from the breach of fiduciary duty were insufficient to support a claim of constructive fraud since (1) the employer's recovery of more than one million dollars from the supplier for fraud as a result of the information supplied by plaintiff did not relate to any breach of fiduciary duty owed to plaintiff; (2) the employer's continued business relationship with the supplier was not predicated on a breach of fiduciary duty owed to plaintiff; and (3) the employer's right to terminate plaintiff's at-will employment without cause was a right the employer already possessed and did not result from a breach of fiduciary duty to plaintiff.

### 2. Employer and Employee— wrongful discharge—violation of public policy—insufficient evidence

Plaintiff former employee failed as a matter of law to establish a claim of wrongful discharge in violation of public policy

where plaintiff's evidence failed to show that defendant employer was engaged in illegal activity or that plaintiff was asked by defendant to violate any state or federal law or to perform any activity injurious to the public, and uncontroverted evidence at trial tended to show that plaintiff was discharged immediately following a lengthy unexcused and unexplained absence from work.

Appeal by plaintiff from judgment entered 12 March 1997 by Judge Ronald E. Bogle in Mecklenburg County Superior Court. Heard in the Court of Appeals 18 November 1998.

*Kennedy, Kennedy, Kennedy and Kennedy, L.L.P., by Harold L. Kennedy, III, Harvey L. Kennedy, and Annie Brown Kennedy, for plaintiff-appellant.*

*Kilpatrick Stockton LLP, by Charles E. Johnson and R. Rand Tucker, for defendants-appellees.*

HUNTER, Judge.

Plaintiff was employed as a machinist with International Business Machines Corporation (IBM) at its facility in Charlotte, North Carolina from December 1989 until December 4, 1991. In March 1990, plaintiff learned that IBM was renegotiating their contract with Atlantic Design Company (ADC), a company where plaintiff had previously worked. Plaintiff informed his manager that he had sensitive information that would be helpful to IBM in their negotiations. He asked for anonymity and was given assurances that his identity would be kept confidential. Plaintiff disclosed that ADC had contracted to manufacture cards for IBM by hand, was actually manufacturing the cards by machine on off shifts, and was billing IBM as if the cards were done by hand. Plaintiff referred to the jobs as "cheat jobs" and stated they involved millions of dollars in fraud.

Plaintiff related the same information to numerous IBM officials and requested anonymity from each, explaining that the ADC managers involved in the fraud were unsavory characters and he feared for his safety. At one point during the investigation, plaintiff met with a representative of ADC's parent company and was introduced to him by name by an IBM manager. Plaintiff claims this was a breach of the manager's promise to maintain his anonymity and after the introduction plaintiff became fearful for his life, became nervous, could not eat, and developed severe stomach and back pains.

**RIDENHOUR v. IBM CORP.**

[132 N.C. App. 563 (1999)]

As a result of plaintiff's information regarding the fraud of ADC, IBM recovered $1,250,000.00 from ADC. Plaintiff applied for IBM's national suggestion award and on 15 June 1991, he received the maximum award of $150,000.00. The award was presented in the presence of four IBM managers, an act which plaintiff contends also breached IBM's commitment to confidentiality. However, defendants claim the application for the award made clear that such an application and award could not be kept confidential.

Plaintiff further claims he experienced on-the-job retaliation after he received the suggestion award. Retaliatory acts included being removed from his regular job and used as an extra, being assigned to the worst machines to assure a decrease in production numbers, being given bad appraisals and bypassed for promotion, and ultimately being terminated on 4 December 1991. Defendants claim that IBM terminated plaintiff's employment after plaintiff left work on 23 November 1991 without permission, had six days of unexcused absences, failed to follow IBM's call-in procedures, and failed to respond to his supervisor's requests for an explanation for his absence.

On 15 December 1994, plaintiff filed a complaint against IBM and several IBM employees including Chet Gurski, IBM's plant manager, alleging wrongful discharge in violation of public policy. An amended complaint added the claim of constructive fraud based on breach of fiduciary duty. During discovery, two defendants were voluntarily dismissed without prejudice and one was dismissed pursuant to Rules 12(b)(4), 12(b)(5), and 12(b)(6) of the North Carolina Rules of Civil Procedure. The remaining defendants' (Gurski and IBM) motion for summary judgment was denied and the case was tried before a jury on 27 January 1997. After the close of plaintiff's evidence, the trial court granted defendants' motion for directed verdict as to all claims against Gurski and as to the constructive fraud claim against IBM. A jury rendered a verdict against the plaintiff on his remaining claim of wrongful discharge in violation of public policy against IBM. Plaintiff appeals.

[1] Plaintiff first contends the trial court committed reversible error in granting defendants' motion for a directed verdict on plaintiff's claim for constructive fraud based on a breach of fiduciary duty. Upon defendants' motion for a directed verdict, the evidence must be taken as true and considered in the light most favorable to the plaintiff. *Farmer v. Chaney*, 292 N.C. 451, 452, 233 S.E.2d 582, 584 (1977).

RIDENHOUR v. IBM CORP.

[132 N.C. App. 563 (1999)]

However, if plaintiff fails to present evidence of each element of his claim for relief, the claim will not survive a directed verdict motion. *Felts v. Liberty Emergency Service*, 97 N.C. App. 381, 383, 388 S.E.2d 619, 620 (1990).

In order to withstand defendants' motion for directed verdict, plaintiff had the burden of presenting evidence to support each element of his constructive fraud claim. In stating a cause of action for constructive fraud, plaintiff must allege facts and circumstances which created the relation of trust and confidence and "which led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff." *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 666, 488 S.E.2d 215, 224 (1997) (citation omitted). "Implicit in the requirement that a defendant '[take] advantage of his position of trust to the hurt of plaintiff' is the notion that the defendant must seek his own advantage in the transaction; that is, the defendant must seek to benefit himself." *Id.* "The requirement of a benefit to defendant follows logically from the requirement that a defendant harm a plaintiff by taking advantage of their relationship of trust and confidence . . . [and is] implicit throughout the cases allowing constructive fraud claims." *Id.* at 667, 488 S.E.2d at 224. *See, e.g.*, *Terry v. Terry*, 302 N.C. 77, 84, 273 S.E.2d 674, 678-79 (1981) (defendant used position of trust and confidence to take advantage of his ill brother and purchase his business at a price below market value); *Link v. Link*, 278 N.C. 181, 193, 179 S.E.2d 697, 704 (1971) (defendant husband took advantage of relationship with wife to obtain shares of stock as part of a separation agreement); *Vail v. Vail*, 233 N.C. 109, 115, 63 S.E.2d 202, 207 (1951) (defendant son took advantage of relationship of trust to obtain deed to property from his mother).

The parties dispute whether plaintiff's forecast of evidence tends to show there was a relationship of trust and confidence between defendants and plaintiff sufficient to support a claim for constructive fraud. We need not decide this issue, however, because we find that although plaintiff claims IBM benefitted from a breach of its fiduciary duty, the benefits plaintiff claims were received are insufficient to support a claim of constructive fraud. Plaintiff first claims that IBM received the monetary benefit of $1,250,000.00 recouped from ADC. However, this money was recovered because of the fraud by ADC and there is no evidence the recovery of the funds relates to any breach of a fiduciary duty owed to plaintiff by IBM. Plaintiff also claims that IBM benefitted by having a continued business relationship with

RIDENHOUR v. IBM CORP.

[132 N.C. App. 563 (1999)]

ADC. Again, we fail to see how this continued relationship was predicated on a breach of fiduciary duty owed to plaintiff. In addition, our Supreme Court has stated that the benefit of a continued relationship "is insufficient to establish the benefit required for a claim of constructive fraud." *Barger*, 346 N.C. at 667, 488 S.E.2d at 224.

The final benefit plaintiff claims IBM received is the retaliatory firing of plaintiff. It has been held that "[e]ither party to an employment-at-will contract can terminate the contract at will for no reason at all, or for an arbitrary or irrational reason." *Tompkins v. Allen*, 107 N.C. App. 620, 622, 421 S.E.2d 176, 178 (1992), *disc. review denied*, 333 N.C. 348, 426 S.E.2d 713 (1993) (citation omitted). "However, this doctrine is not without limits and a valid claim for relief exists for wrongful discharge of an employee at will if the contract is terminated for an unlawful reason or a purpose that contravenes public policy." *Id.* (citations omitted). The jury either found that plaintiff's conduct of reporting the fraud by ADC was not protected by law or that plaintiff's conduct was not a substantial factor in IBM's decision to terminate plaintiff. The benefit of the right to terminate plaintiff without cause was a right IBM already possessed, and therefore IBM could not have received that benefit from breaching a fiduciary duty. We find the trial court properly granted defendants' motion for directed verdict on plaintiff's claim for constructive fraud based on breach of fiduciary duty.

[2] Plaintiff next contends the trial court committed reversible error in its instructions to the jury on plaintiff's claim of wrongful discharge in violation of public policy and in failing to give plaintiff's proposed special jury instructions regarding that claim. Plaintiff requested the trial court to instruct the jury, in part, that no employee may be terminated from his employment in violation of public policy. The court denied plaintiff's request and, instead, instructed the jury from the North Carolina Pattern Jury Instructions—Civil 640.20 (1991). "It is well settled [that] the trial court must give the instructions requested, at least in substance, if they are proper and supported by evidence. However, the trial court may exercise discretion to refuse instructions based on erroneous statements of the law." *Roberts v. Young*, 120 N.C. App. 720, 726, 464 S.E.2d 78, 83 (1995) (citation omitted).

Here, the trial court determined, in its discretion, that the evidence did not support plaintiff's allegation that he was discharged for a purpose contravening public policy and instructed the jury to determine whether the plaintiff was wrongfully discharged for "his partic-

ipation in conduct protected by law." The jury rejected this remaining contention.

As previously stated, North Carolina is an employment-at-will state. Our Supreme Court "has repeatedly held that in the absence of a contractual agreement between an employer and an employee establishing a definite term of employment, the relationship is presumed to be terminable at the will of either party without regard to the quality of performance of either party." *Kurtzman v. Applied Analytical Industries, Inc.*, 347 N.C. 329, 331, 493 S.E.2d 420, 422 (1997), *reh'g denied*, 347 N.C. 586, 502 S.E.2d 594 (1998). Limited exceptions have been adopted to this bright-line rule.

> First, as stated above, parties can remove the at-will presumption by specifying a definite period of employment contractually. Second, federal and state statutes have created exceptions prohibiting employers from discharging employees based on impermissible considerations such as the employee's age, race, sex, religion, national origin, or disability, or in retaliation for filing certain claims against the employer. *See, e.g.*, 29 U.S.C. § 623(a) (1988) (Age Discrimination Act); 42 U.S.C. § 2000e-2a (1988) (Equal Employment Opportunities Act); 42 U.S.C. § 12112(a) (Supp. 1988) (Americans with Disabilities Act); N.C.G.S. § 95-241 (1993) (prohibiting discharge in retaliation for filing workers' compensation, OSHA, and similar claims). Finally, this Court has recognized a public-policy exception to the employment-at-will rule. *See . . . Coman v. Thomas Mfg. Co.*, 325 N.C. 172, 381 S.E.2d 445 (1989) (discharging an employee for refusing to falsify driver records to show compliance with federal transportation regulations offends public policy).

*Id.* at 331-32, 493 S.E.2d at 422.

Public policy is defined as "the principle of law that holds no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good." *Johnson v. Mayo Yarns, Inc.*, 126 N.C. App. 292, 296, 484 S.E.2d 840, 842-43, *disc. review denied*, 346 N.C. 547, 488 S.E.2d 802 (1997). There is no specific list of what actions constitute a violation of public policy. *Garner v. Rentenbach Constructors Inc.*, 129 N.C. App. 624, 628, 501 S.E.2d 83, 86 (1998). However, wrongful discharge claims have been recognized in North Carolina where the employee was discharged (1) for refusing to violate the law at the employers request, *see Sides v. Duke University*, 74 N.C. App. 331, 328 S.E.2d 818, *disc. review denied*, 314 N.C. 331,

333 S.E.2d 490 (1985), (2) for engaging in a legally protected activity, or (3) based on some activity by the employer contrary to law or public policy, *see Garner, supra.*

Viewing the evidence in a light most favorable to plaintiff, it appears, as a matter of law, that plaintiff has failed to establish a claim of wrongful discharge under any of these recognized public policy exceptions. First, plaintiff's employer was not engaged in unlawful activity and plaintiff's evidence shows no indication he was asked by his employer to violate any federal or state law or to perform any activity "injurious to the public or against the public good." Rather, defendant, IBM, was actually the victim of unlawful activity. Plaintiff, of his own accord, reported the fraudulent activity to IBM and saved his employer well over $1 million dollars for which he was awarded $150,000.00. Second, uncontraverted evidence introduced at trial tended to show that plaintiff was discharged immediately following a lengthy unexcused and unexplained absence from work. Based on the above, we find no violation of public policy. The trial court was justified in refusing to instruct the jury on the public policy exception to North Carolina's employment-at-will doctrine.

As a result of our holdings above, we find it unnecessary to address plaintiff's remaining assignment of error.

Affirmed.

Judges MARTIN and SMITH concur.