Kelley v. Charlotte Radiology, P.A., 2019 NCBC 14.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

MICHAEL J. KELLEY,

        Plaintiff,

v.

CHARLOTTE RADIOLOGY, P.A.,

        Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 12279

**ORDER AND OPINION ON
DEFENDANT'S MOTION TO DISMISS**

1.    Plaintiff Michael J. Kelley worked for Defendant Charlotte Radiology, P.A. for 30 years, where he was also a shareholder. In 2017, Kelley took his first steps toward retirement, continuing to work for Charlotte Radiology but in a reduced role. During the transition, Charlotte Radiology informed Kelley that, as a result of his new role, he could no longer be a shareholder—a decision Kelley now disputes. In this action, Kelley alleges that Charlotte Radiology wrongfully barred him from participating in a transaction that resulted in substantial payments to its shareholders. He has sued for breach of contract, breach of fiduciary duty, and violations of the North Carolina Securities Act.

2.    This Opinion addresses two other claims added to the complaint by a later amendment. At the time the original complaint was filed, Kelley and Charlotte Radiology were negotiating an extension of his employment contract. Upon seeing the complaint, Charlotte Radiology withdrew its offer and decided to part ways with Kelley when the existing term expired. Kelley alleges that the withdrawn offer amounts to unlawful retaliation, and he amended his complaint to include claims for wrongful discharge and violation of the Retaliatory Employment Discrimination Act.

Charlotte Radiology has now moved to dismiss these new claims under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. For the following reasons, the Court **GRANTS** the motion.

*Erwin, Bishop, Capitano & Moss, P.A., by J. Daniel Bishop, for Plaintiff Michael J. Kelley.*

*Robinson, Bradshaw & Hinson, P.A., by Robert W. Fuller, Amanda P. Nitto, and Kristin L. Hendrickson, for Defendant Charlotte Radiology, P.A.*

Conrad, Judge.

## I.
## BACKGROUND

3. The Court does not make findings of fact on a Rule 12(b)(6) motion to dismiss. The following factual summary is drawn from relevant allegations in the amended complaint and attached exhibits. (ECF No. 22 ["Am. Compl."].)

4. Kelley joined Charlotte Radiology in 1987. (Am. Compl. ¶ 4.) His original employment contract gave him the right to purchase shares of Charlotte Radiology after three years of employment, subject to certain conditions, "including the execution of a stock redemption agreement." (Am. Compl. Ex. 9 § 19.) When the three-year mark passed, Kelley purchased 100 shares. (*See* Am. Compl. ¶¶ 4, 9.)

5. Kelley would go on to stay with Charlotte Radiology for 30 years. In mid-2015, Kelley gave notice that he intended to retire at the end of 2016. (Am. Compl. ¶ 15.) As his retirement date approached, though, Kelley had a change of heart and opted instead for semi-retirement. (*See* Am. Compl. ¶¶ 12, 15.) He agreed to continue working for Charlotte Radiology in a reduced role through the first six months of 2017, all under the terms of a new Retiree Employment Agreement. (Am.

Compl. ¶ 12, Ex. 3.) The agreement was later extended by a year, through June 2018. (Am. Compl. ¶ 12, Ex. 4.)

6. Although Kelley continued to be an employee, Charlotte Radiology informed him that he would no longer be a shareholder. In a letter dated March 21, 2017, Charlotte Radiology announced that Kelley's "status as a shareholder terminated on December 31, 2016" as a result of his 2015 retirement notice. (Am. Compl. ¶ 14, Ex. 5.) This "change in shareholder status" entailed a number of administrative odds and ends—for example, how to treat unused sick days and whether to rollover balances in a profit-sharing plan. (Am. Compl. Ex. 5.) And, according to Charlotte Radiology, Kelley's "retirement" triggered the mandatory redemption of his shares. (Am. Compl. ¶¶ 14, 16, Ex. 5.) Kelley apparently saw no reason to question this and cashed the $1,000 check that Charlotte Radiology tendered as the redemption price. (Am. Compl. ¶ 21, Ex. 5.)

7. Shortly after cashing the check, Kelley's view began to change. He learned that Charlotte Radiology was planning a "refinance transaction" that would financially benefit shareholders. (Am. Compl. ¶¶ 22, 23.) When Kelley asked to be included, Charlotte Radiology declined. (*See* Am. Compl. ¶ 25.) Before the transaction closed, Kelley pressed his claim again—this time through counsel—and argued that he continued to have rights as a shareholder. (*See* Am. Compl. ¶ 26.) Kelley argued that the contract governing his shareholder rights mandated redemption of his shares only if he "terminates his employment with [Charlotte Radiology] or is discharged, with or without cause." (Am. Compl. ¶¶ 8, 9, Ex. 1 § 4.)

This condition was never met, Kelley asserted, because his employment continued without interruption when the Retiree Employment Agreement took effect. (*See* Am. Compl. ¶¶ 10, 12, 15.) In communications with Charlotte Radiology, Kelley insisted that he deserved his pro rata share of any consideration that would flow to shareholders as a result of the anticipated transaction. (*See* Am. Compl. ¶ 26.)

8. Charlotte Radiology again declined and, in January 2018, closed the refinance transaction. (*See* Am. Compl. ¶¶ 5, 26.) The details of the transaction are unclear, but Kelley alleges that it took the form of a merger and that Charlotte Radiology's shareholders received substantial cash payouts as consideration. (Am. Compl. ¶ 5.) Kelley, on the other hand, received nothing. (*See* Am. Compl. ¶ 23.)

9. Kelley brought this suit in June 2018, asserting claims for breach of contract, breach of fiduciary duty, and violations of the North Carolina Securities Act. (*See* Compl. ¶¶ 30, 35–36, 44, ECF No. 3.) In his original complaint, Kelley alleged that Charlotte Radiology wrongfully redeemed or purported to redeem his shares at a time when it knew that the refinance transaction would occur and that shares in Charlotte Radiology held great value. (*See* Compl. ¶¶ 22, 23.) He also alleged that his pro rata share of the merger consideration would have dwarfed the $1,000 that Charlotte Radiology tendered as the redemption price for his shares. (*See* Compl. ¶ 23.)

10. At the time the original complaint was filed, Kelley and Charlotte Radiology were negotiating another extension of the Retiree Employment Agreement. Charlotte Radiology had initially offered Kelley a new six-month contract. (*See* Am.

Compl. Ex. 6.) Kelley then filed his complaint and, the next day, sent a letter through counsel expressing interest in the employment offer while also seeking clarification on a number of points, including assurances that no provision in the new agreement would act as a waiver or release of Kelley's just-filed claims. (*See* Am. Compl. Ex. 7.) After receiving the complaint, Charlotte Radiology withdrew the offer "pending [a] review of the lawsuit and its allegations against the practice and its staff, etc." (Am. Compl. Ex. 8.) The offer was not reinstated.

11. Kelley alleges that Charlotte Radiology withdrew the offer of employment in retaliation for "the filing of this action to vindicate [his] rights as a shareholder." (Am. Compl. ¶ 49.) He amended his complaint to assert two new claims, one for wrongful discharge and another for violation of North Carolina's Retaliatory Employment Discrimination Act ("REDA"). (*See* Am. Compl. ¶¶ 59, 65.)

12. In response, Charlotte Radiology filed a partial motion to dismiss, seeking to dismiss only these latter two claims. The motion has been fully briefed, and the Court held a hearing on January 8, 2019, at which all parties were represented by counsel. (ECF No. 27.) The motion is ripe for decision.

## II.
## LEGAL STANDARD[1]

13. A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of the complaint." *Concrete Serv. Corp. v. Inv'rs Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986). Dismissal pursuant to Rule 12(b)(6) is appropriate when: "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Corwin v. British Am. Tobacco PLC*, 821 S.E.2d 729, 736–37 (N.C. 2018) (quoting *Wood v. Guilford Cty.*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002)).

14. In deciding a Rule 12(b)(6) motion, the Court must treat the well-pleaded allegations of the complaint as true and view the facts and permissible inferences "in the light most favorable to" the non-moving party. *Ford v. Peaches Entm't Corp.*, 83 N.C. App. 155, 156, 349 S.E.2d 82, 83 (1986). "[T]he court is not required to accept as true any conclusions of law or unwarranted deductions of fact." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 56, 554 S.E.2d 840, 844 (2001). The Court "may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers" without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Weaver v. St. Joseph of the Pines, Inc.*, 187 N.C.

---

[1] Because Charlotte Radiology filed its motion to dismiss contemporaneously with its answer, Kelley's response brief urges the Court to treat the motion as one for judgment on the pleadings pursuant to Rule 12(c). (*See* Resp. to Def.'s Mot. Dismiss 1–3, ECF No. 28 ["Resp. Br."].) At the hearing, however, counsel agreed that the analysis here would be essentially the same under either Rule 12(c) or Rule 12(b)(6). Thus, for simplicity, the Court applies the Rule 12(b)(6) standard.

App. 198, 204, 652 S.E.2d 701, 707 (2007) (quoting *Oberlin Capital,* 147 N.C. App. at 60, 554 S.E.2d at 847).

## III.
## ANALYSIS

### A. REDA

15.    Over the years, our General Assembly has enacted a variety of laws dealing with employee working conditions.  The Workers' Compensation Act, for example, provides "swift and sure compensation to injured workers without the necessity of protracted litigation." *Rorie v. Holly Farms Poultry Co.*, 306 N.C. 706, 709, 295 S.E.2d 458, 460 (1982); *see also* N.C. Gen. Stat. § 97-1.  The Wage and Hour Act sets the minimum wage and maximum hours for employees, along with other rights. *See, e.g.*, N.C. Gen. Stat. §§ 95-25.3, 95-25.4.  And the Occupational Safety and Health Act of North Carolina aims "to ensure so far as possible every working man and woman in the State of North Carolina safe and healthful working conditions." *Id.* § 95-126(b)(2).  These and other statutes grant employees valuable protections and rights, all enforceable through regulatory or judicial channels.

16.    The General Assembly has also recognized that some employees might choose not to assert these rights—such as filing a workers' compensation claim or reporting an unsafe working condition—if doing so carried with it a high risk of being fired or facing other discriminatory action.  REDA aims to remove, or at least alleviate, that fear.  It prohibits "any retaliatory action against an employee because the employee in good faith does or threatens to," among other things, "[f]ile a claim or complaint" with respect to the Workers' Compensation Act, the Wage and Hour

Act, and other statutory employment rights. *Id.* § 95-241(a)(1). The goal is "to prevent employer retaliation from having a chilling effect upon an employee's exercise of" these statutory rights. *Whitings v. Wolfson Casing Corp.*, 173 N.C. App. 218, 222, 618 S.E.2d 750, 753 (2005).

17. The question here is whether Charlotte Radiology violated REDA when it revoked an offer to extend or renew Kelley's term of employment. (Am. Compl. ¶¶ 46–48.) Kelley says yes. Kelley contends that he exercised his legally protected rights "with respect to" the Wage and Hour Act when he filed his original complaint. (Am. Compl. ¶ 53.) He further asserts that Charlotte Radiology offered to extend his term of employment but then revoked that offer because he filed the complaint. (Am. Compl. ¶¶ 46–49, Ex. 8.) The revocation, Kelley argues, was an unlawful retaliatory action. (Am. Compl. ¶ 54.)

18. Charlotte Radiology appears to concede that "the failure to renew an employment contract constitutes an adverse employment action for purposes of REDA." *Johnson v. Trs. of Durham Tech. Cmty. Coll.*, 139 N.C. App. 676, 682, 535 S.E.2d 357, 362 (2000). But it argues that any retaliation here was not unlawful because Kelley did not exercise a statutorily protected right. According to Charlotte Radiology, Kelley's original complaint asserted claims based only on Kelley's shareholder rights, not his employee rights. (*See* Mem. in Supp. Mot. Dismiss 5, ECF No. 25 ["Mem. in Supp."]; Reply Mem. in Supp. Mot. Dismiss 4, ECF No. 37 ["Reply Br."].)

19.    An essential element of any REDA claim is that the employee engaged in legally protected activity.  To state a REDA claim, a plaintiff must allege (1) that "he exercised his rights" under one of the enumerated statutes; (2) "that he suffered an adverse employment action;" and (3) that "the alleged retaliatory action was taken because" he exercised his statutory rights.  *Wiley v. United Parcel Serv., Inc.*, 164 N.C. App. 183, 186, 594 S.E.2d 809, 811 (2004).  When the employee fails to plead facts sufficient to show the exercise of a legally protected right, the claim must be dismissed.  *See, e.g.*, *Pierce v. Atl. Grp., Inc.*, 219 N.C. App. 19, 26–28, 724 S.E.2d 568, 574–75 (2012); *Delon v. McLaurin Parking Co.*, 367 F. Supp. 2d 893, 902 (M.D.N.C. 2005).

20.    The amended complaint falls short.  Kelley alleges a single instance of protected activity: that he exercised his rights under the Wage and Hour Act when he filed the original complaint.  But the original complaint identified only three claims for relief, none of which arose under the Wage and Hour Act.  (*See* Compl. ¶¶ 29–31, 32–37, 38–45.)  In fact, there is no reference in the original complaint to the Wage and Hour Act or to any of the statutes codifying the Act.

21.    Kelley does not argue otherwise.  Rather, his argument appears to be that the facts alleged in the original complaint *could have* given rise to a Wage and Hour Act claim, which is sufficient to show that he engaged in protected activity.  That is a doubtful proposition.  It would be odd to hold that an employee, having chosen not to bring a Wage and Hour Act claim, nevertheless engaged in protected activity by instead filing claims based on other statutory or common-law rights not protected by

REDA. After all, "the exercise of one's rights *under the [Wage and Hour] Act* is the legally protected activity." *Whitings*, 173 N.C. App. at 222, 618 S.E.2d at 753 (emphasis added).

22. Furthermore, the employee's actions must give fair notice to the employer that the employee was in fact exercising a statutorily protected right, such as by filing a claim or threatening to do so. *See* N.C. Gen. Stat. § 95-241(a)(1). As the United States Supreme Court has observed in interpreting analogous federal laws, "a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011) (analyzing claim under the Fair Labor Standards Act). The reason is simple: "it is difficult to see how an employer who does not (or should not) know an employee has made a complaint could discriminate *because* of that complaint." *Id.* (emphasis in original).

23. Even if Kelley is correct that the facts in his original complaint could have supported a Wage and Hour Act claim, that complaint did not give fair notice to Charlotte Radiology of such a claim or Kelley's intent to assert one. The original complaint did not even use the word "wage." Instead, all of the allegations focused on Kelley's shareholder rights, stemming from contract and the securities laws. In Kelley's own words, the original complaint sought to "vindicate [his] rights as a shareholder." (Am. Compl. ¶ 49.) The Court sees no reasonable way to read the

original complaint as "a claim or complaint . . . with respect to" the Wage and Hour Act.  N.C. Gen. Stat. § 95-241(a)(1).

24.     Thus, taking Kelley's allegations as true, the amended complaint does not sufficiently allege that Kelley engaged in statutorily protected activity.  The Court therefore grants the motion to dismiss the REDA claim.

B.  Wrongful Termination

25.     Kelley also asserts that Charlotte Radiology's decision not to renew his employment contract amounts to wrongful termination.  (Am. Compl. ¶ 64.)  In North Carolina, "a valid claim for relief exists for wrongful discharge of an employee at will if the contract is terminated for an unlawful reason or a purpose that contravenes public policy." *Ridenhour v. IBM*, 132 N.C. App. 563, 567, 512 S.E.2d 774, 777 (1999).

26.     As the outset, it is not clear how the wrongful discharge claim could survive independently of Kelley's REDA claim because the amended complaint grounds the requisite public policy violation in REDA.  (Am. Compl. ¶ 63 ("It is contrary to the public policy of North Carolina as expressed in the protected activities listed in G.S. Ch. 95, Art. 21, to terminate an employee in retaliation for asserting such a right.").)  Charlotte Radiology has not raised the issue, however, so the Court assumes that the claim for wrongful discharge can stand alone.

27.     Charlotte Radiology instead presses two other grounds for dismissal.  First, wrongful discharge does not extend "to shareholders exercising their shareholder rights."  (Mem. in Supp. 8.)  Second, Kelley does not allege that he was an at-will

employee. (Mem. in Supp. 10; Reply Br. 8–9.) The Court addresses only the second argument.

28. In North Carolina, "[t]he tort of wrongful discharge arises only in the context of employment at will." *Claggett v. Wake Forest Univ.*, 126 N.C. App. 602, 611, 486 S.E.2d 443, 448 (1997).[2] Employment is generally terminable at the will of either party unless the relationship is governed by a contract "establishing a definite term of employment." *Kurtzman v. Applied Analytical Indus.*, 347 N.C. 329, 331, 493 S.E.2d 420, 423 (1997). Breach of contract, not wrongful termination, "is the proper claim for a wrongfully discharged employee who is employed for a definite term." *Wagoner v. Elkin City Sch. Bd. of Educ.*, 113 N.C. App. 579, 588, 440 S.E.2d 119, 125 (1994).

29. In his response brief, Kelley appeared to acknowledge that he was not an at-will employee. (*See* Resp. Br. 14.) This is perhaps because the Retiree Employment Agreement states that Kelley would be employed for a definite term of six months, which was then renewed for an additional year. (Am. Compl. Ex 3 § 1, Ex. 4.)

30. At the hearing, however, Kelley changed course and argued for the first time that he was an employee at will. He now points to section 10(c) of the Retiree Employment Agreement, which provides that Charlotte Radiology may terminate the

---

[2] Some States do extend the claim to employment relationships that are not at will. *See, e.g.*, *Ackerman v. State*, 913 N.W.2d 610, 621 (Iowa 2018) ("[W]e hold contract employees may bring common law claims alleging wrongful termination in violation of public policy."); *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 103 (Mo. 2010) ("The foregoing reasons provide a compelling rationale for affording both at-will and contract employees the same limited right to bring a claim for wrongful discharge in violation of public policy.").

contract "without cause" subject to written notice of sixty days and approval by majority vote of its Board of Directors. (Ex. 3 § 10(c).) The same section permits Kelley to terminate the contract without cause subject to written notice of ninety days. This provision, Kelley argues, demonstrates that the contract was for employment at will even though it purportedly guaranteed a definite term of employment. *See Hopkins v. MWR Mgmt. Co.*, 2015 NCBC LEXIS 104, at *9 (N.C. Super. Ct. Nov. 5, 2015) (holding that contract with two-year term was, in fact, an at-will contract because either party could terminate without cause at any time).

31. This is an interesting, and apparently unsettled, question. Courts have reached different conclusions about the nature of an employment relationship when the employment agreement permits termination without cause subject to a notice requirement. *Compare Quality Merch. Grp. v. Sides*, 2003 N.C. App. LEXIS 1276, at *9 (N.C. Ct. App. July 1, 2003), *with Hyde v. Land-of-Sky Reg'l Council*, 572 F.2d 988, 992 (4th Cir. 1978). In at least some circumstances, the existence of a lengthy notice requirement may show that "neither [party] had unbounded discretion to end the employment relationship." *Keeshan v. Eau Claire Coop. Health Ctrs., Inc.*, 394 F. App'x 987, 993 (4th Cir. 2010).

32. The Court need not decide that issue here, though. The amended complaint makes clear that Charlotte Radiology did not terminate Kelley during the term of his Retiree Employment Agreement. Rather, Kelley stayed on through the expiration of the contract, and Charlotte Radiology decided not to enter into a new contract for an additional term. (*See* Am. Compl. ¶¶ 46–48, Ex. 8.) That is important because courts

have consistently held that "the tort of wrongful discharge in violation of public policy does not contemplate failures to rehire or reappoint." *Randleman v. Johnson*, 162 F. Supp. 3d 482, 488 (M.D.N.C. 2016); *see also Burns v. Bd. of Trs. of Robeson Cmty. Coll.*, 2013 U.S. Dist. LEXIS 134256, at \*20 (E.D.N.C. Sept. 18, 2013); *Satterwhite v. Wal-Mart Stores E., L.P.*, 2012 U.S. Dist. LEXIS 9584, at \*9 (E.D.N.C. Jan. 26, 2012).

33. Kelley tries to avoid this by describing Charlotte Radiology's decision as the "at-will nonrenewal of a term contract," but such a characterization is not supported by case law. (Resp. Br. 14.) Put simply, the Court is unaware of any case law holding that an anticipated, but never consummated, renewal of a term contract gives rise to an at-will employment relationship. *See, e.g.*, *Claggett*, 126 N.C. App. at 611, 486 S.E.2d at 448 (finding no at-will employment for purposes of wrongful discharge when university failed to grant tenure to a professor employed by a term contract); *J.W. v. Croom*, 2012 U.S. Dist. LEXIS 136300, at \*45–46 (E.D.N.C. Sept. 24, 2014) (finding no at-will employment when "[p]laintiffs allege that the Board employed Newsome pursuant to a teaching contract of definite duration and that the Board elected not to renew her teaching contract"); *Googerdy v. N.C. Agric. & Tech. State Univ.*, 386 F. Supp. 2d 618, 626 (M.D.N.C. 2005) (finding no at-will employment when a term contract was not renewed). The Court therefore grants the motion to dismiss Kelley's claim for wrongful discharge.

IV.
CONCLUSION

34. For all these reasons, the Court **GRANTS** the motion and **DISMISSES** Count IV and Count V of the amended complaint with prejudice.

This the 27th day of February, 2019.

/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
 for Complex Business Cases